UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――
THERESA BRITTON,
                          Plaintiff,

          -v-                                   21-CV-7079 (JPO)

BRONX PARENT HOUSING                OPINION AND ORDER
NETWORK, INC., VICTOR RIVERA,
AND THE CITY OF NEW YORK,
                        Defendants.
―――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

       Plaintiff Theresa Britton brought this action against the Bronx Parent Housing Network ("BPHN"), its former director Victor Rivera, and the City of New York, claiming (1) violations of Title VII of the Civil Rights Act of 1964 for racial and sexual harassment; (2) violations of New York Labor Law §201-g; (3) violations of New York City Human Rights Law § 8-107; (4) assorted New York state common law claims for "assault, battery, negligence, prima facie tort, sexual assault, unlawful touching"; and (5) an unspecified claim against the City of New York alleging that the city knew of misconduct at BPHN and nonetheless continued to fund the organization. In August 2022, Britton settled her claims against defendants BPHN and Rivera. (*See* Dkt. No. 42.) The City of New York did not participate in the settlement, and Britton's case against the City of New York continues. *Id.* Before the court is Defendant City of New York's motion to dismiss. For the reasons that follow, the City's motion is granted.

1

I.      Background[1]

The Bronx Parent Housing Network ("BPHN") is a non-profit registered in New York State that operates in Bronx County, New York. (Compl. ¶¶ 6-7.) Britton, a black woman, worked at BPHN from 2019 to 2021. (Compl. ¶¶ 5, 13.) While Britton worked at BPHN, she alleges that BPHN compensated her less than other, less qualified colleagues who were not black women. (Compl. ¶ 16.) Britton claims that she performed uncompensated work outside of her job description and was denied raises for which her performance reviews qualified her. (Compl. ¶¶ 18, 22.) When she requested an equal raise, she alleges that she was denied and that the Director of Human Resources told her that she sounded like an "angry black woman." (Compl. ¶¶ 20, 21.)

Britton also contends that BPHN compensated her poorly compared to other colleagues who were sexually or socially involved with Victor Rivera, then the BPHN Director, and his friends, as well as other colleagues who, unlike Britton, tolerated or participated in an environment of harassment from Rivera and others at BHPN. (Compl. ¶¶ 16, 29, 36, 37.) In addition to generalized claims of a hostile and sexually charged work environment, Britton contends that Rivera subjected her to a sexually inappropriate "handshake" at a BPHN company picnic. (Compl. ¶ 45.) Britton also alleges that she complained about the sexual harassment and hostile work environment at BPHN, and that instead of remedying the problem, leadership at BPHN terminated her employment. (Compl. ¶¶ 37, 42, 43.)

II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff

---

[1] These background facts are taken from the Complaint, Docket Number 2, ("Compl.") and presumed true for the purposes of this Opinion and Order.

must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *id*. at 558, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Under this standard, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Finally, in determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to the "facts stated on the face of the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted).

**III.    Discussion**

    **A.    Count One (Title VII)**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  Crucially, Title VII pertains to discrimination *by an employer*.  Appropriately, then, "the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006); *see also Wang v. Phoenix Satellite Television US, Inc.,* 976 F. Supp. 2d 527, 536 (S.D.N.Y. 2013) (explaining that it has "long been axiomatic" that to be liable for employment discrimination "there must have existed between the parties . . . the relationship of employer and actual or prospective employee").

Here, Britton does not allege an employment relationship with the City of New York in her Complaint. Indeed, she does not even mention the City of New York until her fifth claim, which is the only claim explicitly asserted against the City. (*See* Compl. ¶ 67.) In her opposition to Defendant's motion to dismiss, Britton does not deny that she failed to plead an employer relationship with the City of New York. Instead, in two separate filings, she attempts to plead additional facts in an effort to allege an employer relationship with the City of New York through either the single or joint employer doctrine. (Dkt. No. 21 at 3-4; Dkt. No. 22 at 2.)

### 1. Single Employer Doctrine

For the City of New York to be Britton's employer under the single employer doctrine, it must be the parent of BPHN such that the two represent "a single, integrated enterprise." *Shukla v. Viacom Inc.*, No. 18 Civ. 3522, 2019 WL 1932568, at *6 (S.D.N.Y. May 1, 2019). To determine whether a parent and subsidiary constitute a single employer, the Second Circuit has adopted a four-part test, examining "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). Of these factors, the most "critical" is the second: centralized control of labor. *Id.* at 1240–41. Indeed, the Circuit has stated that "the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)).

In her opposition papers, Britton offers the following statements in favor of her argument that the City of New York and BPHN are in fact one single enterprise: that the amount and recent increases of funding that the City gives to BPHN creates "total financial control," and that the City of New York Department of Homeless Services refers people in need to BPHN for housing

4

assistance.  (Dkt. No. 21 at 7.)  Britton also includes statements from a plaintiff in a different case; this plaintiff allegedly told their shared counsel that the City of New York recommended her for a promotion that she received, and that the two entities had a "centralized control of labor relations."  *Id.*

These offerings are not sufficient to support a plausible inference of a single employer relationship between the City of New York and BPHN.  A plaintiff must "do more than simply state legal conclusions and recite the elements of the 'single employer' standard to survive a motion to dismiss."  *Fried v. LVI Services, Inc.,* No. 10 Civ. 9308, 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011).  While whether two employers are sufficiently joined so as to constitute a single employer is a fact-intensive inquiry that is not always suited to dismissal at this stage, a complaint still must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Here, Britton offers only conclusory recitations, including literal restatements of the elements of the single employer test, as well as information about someone who is not a party to this action.

Moreover, the single employer test "has been confined to two corporate contexts: first, where the plaintiff is an employee of a wholly-owned corporate subsidiary; and second, where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity."  *Gulino*, 460 F.3d at 378.  Neither is the case here.  Courts in this Circuit have been wary of extending the single-employer doctrine outside of these contexts, "especially where, as here, a government entity is involved."  *Popat v. Levy,* 328 F. Supp. 3d 106, 119 (W.D.N.Y. 2018) (declining to extend the single-employer doctrine to a non-profit associated with a university); *see also Gulino*, 460 F.3d at 378 (explaining that extending the single-employer doctrine to

government contexts "would be impracticable and would implicate . . . constitutional concerns."). Plaintiff's attempt to use the single employer doctrine to show that the City of New York employed her fails.

### 2.     Joint Employer Doctrine

Britton also gestures to the joint employer doctrine. Though Britton's briefing sometimes conflates the two doctrines, they are legally distinct. "A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they . . . handle certain aspects of their employer-employee relationship jointly." *Arculeo v. On-Site Sales & Mktg., LLC,* 425 F.3d 193, 198 (2d Cir. 2005). This doctrine can impose liability on a "joint" employer where an employee who is formally employed by one entity has been "assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity." *Id.* Thus, an employer may be considered a joint or co-employer where there is evidence that the putative employer "had immediate control over the other [entity]'s employees." *NLRB v. Solid Waste Services, Inc.*, 38 F.3d 93, 94 (2nd Cir. 1994). To establish a "joint employer" relationship between two entities, a plaintiff must allege "commonality of hiring, firing, discipline, pay, insurance, records, and supervision . . . ." *Lima v. Addeco*, 634 F. Supp. 2d 394, 399–400 (S.D.N.Y. 2009), *aff'd,* 375 Fed.Appx. 54 (2d Cir. 2010).

It is not entirely clear from Britton's opposition papers whether she is currently pleading facts to show that the City of New York was her joint employer, or whether she seeks leave to amend to plead these facts. To the extent that she intends to plead the facts now in her opposition papers, she contends that the BPHN website identifies the City of New York as a

6

"Partner," that the City of New York "supervised the [p]laintiffs[2] working at BPHN on a minute to minute, hour to hour day to day basis," that the ID badge she wore referenced both BPHN and the City of New York, and that the City of New York "trained and recommended the employment or promotion of staff." (Dkt. No. 22 at 2.)

As with the single employer doctrine, "[c]onclusory, *ipse dixit* assertions about the degree of control" exercised between two entities "do not satisfy the pleading standards as articulated in *Twombly* and *Iqbal*." *McHenry v. Fox News Network, LLC,* 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020) (quoting *Fried*, 2011 WL 2119748, at *5). Britton's additional pleadings are either conclusory or insufficient to support a theory that BPHN and the City of New York were joint employers. They fall shorter still than other cases in this district where courts considered whether plaintiffs had established that a defendant who was not their formal employer was liable under Title VII as a joint employer and concluded that they failed. *See, e.g.*, *McHenry,* 510 F. Supp. 3d at 82 (holding that allegations made upon information and belief that Fox Corp. made hiring and firing decisions, controlled discipline, pay, insurance, records, and supervised Fox News, hired the alleged harasser and retained ultimate control over his employment were insufficiently factually detailed to sustain a Title VII claim). Britton's attempt to plead that the City of New York is her joint employer alongside BPHN fails. Accordingly, Count One of Britton's Complaint is dismissed as against the City of New York.

---

[2] Britton is the only plaintiff in the current action, though her papers frequently refer to and borrow facts from other pending cases with other plaintiffs in this District. In light of repeated references to other, mostly unidentified cases throughout Britton's pleadings, it bears emphasis that this case will be evaluated on its own merits and must stand or fall on its own pleadings.

7

### B. Count Five (City of New York)[3]

Britton's fifth claim is the only claim explicitly levied against the City of New York. She argues that the City "had knowledge of the complaints of racial and sex harassment of Director Rivera" and "the settlements of money aid to victims of his harassment," "ignored enforcement of all discrimination and sex harassment laws against the Defendants," and continued "to fund BPHN with millions of dollars of tax-payer monies." (Compl. ¶¶ 67-68.) Britton does not, however, identify a legal theory that could support a claim to relief, nor can the Court discern one from her briefings, even reading them liberally. At a bare minimum, a "pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader." *Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139, 145 (S.D.N.Y. 2001) (quoting 2 Moore's Federal Practice ¶ 12.34[1][b] at 12-60). It is well established that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice . . . so as to enable [that party] to answer and prepare for trial." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988). Here, it is unclear what law Britton believes that the City of New York violated by funding BPHN, or what legal theory she would present at trial. Britton fails to clarify this in her opposition papers, instead repeating her factual allegations and pointing to other cases. Consequently, this claim must also be dismissed.

### C. Claims Two, Three, and Four (State Law Claims)

Britton also brings several state law claims, namely, violations of New York Labor Law §201-g, violations of New York City Human Rights Law § 8-107, and assorted New York state

---

[3] Britton's briefing does not identify whether she brings this claim under state or federal law. The Court addresses it here only as to a putative federal claim.

common law claims, although it is unclear which if any of these claims are asserted against the City of New York. In any event, because Britton's federal law claims are being dismissed at the pleadings stage, the Court does not consider any remaining state law claims and declines to exercise supplemental jurisdiction over them. Accordingly, the state law claims are dismissed without prejudice to refiling in state court. *See* 28 U.S.C. § 1367(c)(3).

### D.     Leave to Amend

Britton's opposition papers, in addition to opposing the City of New York's motion to dismiss, also request leave to amend the complaint to correct any deficiencies identified through this briefing. (*See* Dkt. No. 21; Dkt. No. 22.) As the City of New York points out, Britton's request violates this Court's rules in several ways: first, she submitted both of her oppositions late, and submitted two instead of one; second, she requested leave to amend nearly two months after Defendants filed their Motion to Dismiss; and third, she did not notify the Court or the Defendants of her intention to amend her complaint in response to their motion, as required by paragraph 3(D) of this Court's Individual Rules of Practice. Furthermore, Britton endorsed a briefing schedule for this motion that "assum[ed] that the plaintiff does not seek to file a proposed Amended Complaint," which this Court approved. (Dkt. No. 17; Dkt. No. 18.) Britton has offered no explanation for these actions.

Moreover, the additional facts that Britton purports to plead in both of her opposition filings do not save her claims from dismissal, and she has not identified how additional amendment would remedy these defects. At this point, Britton has had multiple chances to remedy the deficiencies in her Complaint. The Court concludes that further amendment would be futile. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (explaining that leave to amend may be denied in the case of "undue delay, bad faith, dilatory motive, [or] futility.") Britton's request for leave to amend is therefore denied.

### IV. Conclusion

Defendant the City of New York's motion to dismiss is hereby GRANTED and all counts against the City of New York are DISMISSED. Plaintiff Theresa Britton's request for leave to amend is hereby DENIED.

The Clerk of Court is respectfully directed to close the motion at Docket Number 15 and close the case.

SO ORDERED.

Dated: September 19, 2022
       New York, New York

_____
J. PAUL OETKEN
United States District Judge